**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

ALFERED SAYAD,

      Defendant - Appellee.

No. 08-1366

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:07-CR-00470-JLK-1)**

---

Michael C. Johnson, Assistant United States Attorney (David M. Gaouette, Acting United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff - Appellant.

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant - Appellee.

---

Before **KELLY**, **BRORBY,** Senior Judge, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Alfered Sayad pleaded guilty to interstate travel in aid of racketeering, a violation of 18 U.S.C. § 1952(a)(3)(A). The district court sentenced Sayad to five years of probation, a sentence well below the range recommended by the United States Sentencing Guidelines ("USSG" or the "Guidelines"). The government appeals this below-Guidelines sentence, and this court treats its challenges under the rubrics of both procedural and substantive reasonableness. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), this court **AFFIRMS** the sentence imposed by the district court.

## II. Background

On November 4, 2007, Sayad was stopped by a Colorado state trooper for a traffic violation. During the traffic stop, the trooper asked for and received consent from Sayad to search his pick-up truck. The trooper's certified narcotics dog walked around the exterior of the truck and alerted to the rear bumper on the driver's side. Closer investigation revealed the presence of fresh silicone and new paint in that area, which did not match the rest of the tailgate. The trooper then discovered what appeared to be a false compartment in the bed of the pick-up. When the sliding tray was opened, police discovered eleven packages containing 11.04 kilograms of cocaine.

Sayad was later interviewed by DEA special agents Jay Tinkler and Dan Reuter. Sayad stated he thought there were only one or two "chickens" in the

compartment, and that this was the first time he had transported illegal drugs. He told the officers he agreed to transport the drugs because he needed money to pay debts he incurred in his dog breeding business.

Sayad was charged in a criminal information with one count of interstate travel in aid of racketeering, a violation of 18 U.S.C. § 1952(a)(3)(A), and pleaded guilty to this charge. In advance of the sentencing hearing, a U.S. probation officer prepared a presentence report ("PSR"). The PSR set Sayad's base offense level at thirty-two due to the large amount of cocaine involved. The offense level was reduced by three levels to twenty-nine under USSG § 3E1.1 for Sayad's acceptance of responsibility. Because the resulting Guideline range fell entirely above the sixty-month statutory maximum term of imprisonment, sixty-months imprisonment became the advisory Guideline range. USSG § 5G1.1(a).

Sayad submitted objections to the PSR. He argued his offense level should have included an additional two-level reduction pursuant to USSG § 3B1.2(b) due to the minor role he played in the offense. Sayad also argued the Guideline calculation should have included a "safety valve" reduction because he truthfully provided the government with information regarding his involvement in the offense. *See* USSG § 5C1.2. Assuming the district court agreed with all of his arguments, Sayad's advisory Guideline range would be fifty-seven to seventy-one months. Because the maximum term of imprisonment allowed by statute was

sixty months, the Guideline range would be narrowed to fifty-seven to sixty months' imprisonment. *Id.* § 5G1.1(a).

Sayad also asserted a downward variance was warranted pursuant to 18 U.S.C. § 3553(a). First, he argued that although he transported the cocaine, he was not the supplier and was not aware of the large quantity of drugs hidden in the truck. Second, he relied upon his family's history of persecution in Iran, their subsequent flight to the United States, their struggle to forge a living in their new surroundings, and their reliance on him to help run the family restaurant. Third, Sayad asserted his lack of criminal history, non-violent nature, and strong family ties demonstrated he was not likely to present a future risk to the public. As a result, Sayad submitted a sentence to a term of imprisonment of ninety days followed by three years of supervised release would be sufficient but not greater than necessary and would not undermine the factors set forth in § 3553(a). Sayad also attached photos of his family and their restaurant as well as several letters from family members and members of his community that attested to his character, friendliness, and naivete. The government did not file any written response to Sayad's objections.

At sentencing, Sayad's counsel emphasized Sayad's acceptance of responsibility and provided details of Sayad's cooperation with the government and the events leading up to his arrest. Sayad's troubles began when the computer school he was attending closed, leaving Sayad with student loans he

could not pay and a poor credit rating. Sayad befriended an individual who promised to help Sayad improve his credit rating by buying a truck for him and forwarding the payments. This individual subsequently offered Sayad the chance to make more money by transporting drugs in the truck.

Sayad's counsel further asserted that although Sayad knew he was transporting illegal substances, he neither knew the quantity nor where they were located in the truck. Furthermore, the drugs were found in a very sophisticated compartment in the bed of the truck that was constructed by an experienced drug smuggler, not someone of Sayad's level of knowledge.

Turning to the § 3553(a) factors, Sayad's counsel argued Sayad was a young man who clearly would not be involved in this type of activity again. He had been fully compliant while on release, did not have any substance abuse or alcohol problems, and was raised by "good people" who cared enough about him to be present in the courtroom. Sayad's family worked very hard, and his aging parents relied heavily upon him to run their restaurant. Furthermore, Sayad's family had already suffered financially as a result of Sayad's arrest.

In light of the circumstances, Sayad's counsel again asked the court to disregard the Guideline calculations and impose a sentence of time served (ninety days), followed by a term of supervised release. Sayad's counsel informed the court of Sayad's willingness "to do whatever the Court requires" to allow him to help his family recoup what they had lost as a result of his actions.

Both Sayad and his father addressed the district court. Sayad's father described how hard the family worked to establish a successful restaurant business after arriving in the United States, and also described his efforts to raise his son Sayad to be honest, truthful, and trusting. He also stated his son realized he made a "big mistake," and told the court how important Sayad's help was to operating the family's restaurant. In his statement to the court, Sayad repeatedly apologized, characterizing himself as "naive," "stupid," and "like a donkey," and his behavior as a "big mistake" which deserved punishment. Sayad, however, also recognized the emotional and financial harm he had caused his parents, and begged the court to allow him to "go back and help my parents out." He promised the court he had changed and would never again make such a mistake. During the sentencing hearing, the government did not respond or object to the arguments presented by Sayad's counsel, or the content of Sayad's and his father's statements.

After listening to the argument of Sayad's counsel, and the statements of Sayad and his father, the district court first addressed Sayad's objections to the PSR. The judge held Sayad did not qualify as a "minor participant" pursuant to USSG § 3B1.2 for several reasons. First, there was no evidence corroborating Sayad's assertion that his sole involvement was as a mule. Second, the large quantity of drugs entrusted to Sayad "cast some degree of doubt" on the assertion he was just a one-time courier. Third, Sayad's false statements to the police at

the time of his arrest regarding the extent of his knowledge about the hidden compartment cast further doubt on Sayad's story. Finally, the court found Sayad's use of the term "chickens," in reference to the packages of drugs he was transporting, indicated he was less naive, and more involved, than he professed. The court concluded that "this may well have been his first offense, but it is more likely to me the first time caught" and that "[i]t's more than likely that he knew a lot more than he was telling to the authorities."

The district court, however, found Sayad was entitled to a two-level safety valve reduction pursuant to USSG § 5C1.2. At issue was whether Sayad had met the fifth requirement and "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2. The final addendum to the PSR indicated the government no longer contested this point. Accordingly, the district court granted the two-level safety valve reduction. Because the resulting Guideline range fell entirely above the maximum term of imprisonment allowed by statute, Sayad's advisory Guideline sentence was the statutory maximum of sixty months' imprisonment pursuant to USSG § 5G1.1.

The district court next noted the Guidelines are not mandatory and turned to the factors set out in 18 U.S.C. § 3553(a). Under § 3553(a)(1), the court first stated "the illegal transportation of a large quantity of drugs is a very serious

-7-

matter which . . . justifies imprisonment for a lengthy period of time." The court

next turned to the "history and characteristics of the defendant":

> [U]nlike many, many defendants in criminal cases, this particular defendant has a supportive and loving family . . . . [Unfortunately], that kind of support [wasn't] enough to keep him out of trouble in the first place. But they cared enough to be here with him today, and they express considerable concern for him and his future.

> Perhaps even more moving to me is that there seems to be a definite necessity for him to be with his family considering his father's health and their ability to survive, if not prosper, in the very demanding business of running a restaurant.

> I have no doubt that these parents truly need this defendant to be with them. I also am very troubled—it is just my own opinion, but I have a distinct feeling that the reason that this defendant is so naive is because he has not matured and grown up the way that he should have, as his behavior is more consistent with that of a teenage boy than someone his age. And had he been mature at this age, I doubt he ever would have gotten into this trouble. But that seems to me to be something that he has at least thought about.

> I don't think it's a rapid maturation as anything he is going to be able to do on his own or even with his family. He needs some kind of concerted effort to get to the point where he can act commensurate with his age. . . .

> . . . .

> As to other characteristics, he seems to be in good physical health, and has expressed enough anguish over this to suggest that there are no sociopathic problems involved with him. And there is no history of substance abuse . . . . So that is a matter that, likewise, militates in favor of this defendant.

Turning to § 3553(a)(2), the court continued:

-8-

I have to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. . . .

. . . "Just punishment" means that the law must be respected, it means the public must be protected. And this defendant has, indeed, participated in something which is injurious to the public.

But it also still has this other factor that weighs heavily on the needs of his parents. The unintended consequences of penalties include the effects that it has on other people, and this defendant's family is in a position where those unintended consequences are potentially disastrous to them.

I'm inclined to believe that there is more benefit in this particular case to efforts to rehabilitate this individual than there is to punish him as a lesson to others. I don't know what kind of lesson to others comes from punishing a person whose native language i[s] not English, who is not in a culture in which he grew up, and who is a religious and political refugee living as a stranger in a strange land.

Who does it apply to? How many other people are there that are Iranian Christians that come in who can identify with this kind of thing. I am sure the ones he does know are disgraced by what he's done, and probably more so than in other cultures within our society. That's something he has to bear.

After this analysis of the § 3553(a)(1) and (2) factors, and in light of Sayad's father's statement, the district court decided against imposing a Guideline sentence because the Guidelines did not "come to the right area of concern in this particular case." Instead, the district court placed Sayad on probation for a period of five years.

**III. Discussion**

*A. Standard of Review*

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews sentences for reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation omitted). "Procedural reasonableness involves using the proper method to calculate the sentence." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). The Supreme Court in *Gall* has identified several procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Substantive reasonableness, on the other hand, involves "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a)]." *Conlan*, 500 F.3d at 1169 (citation omitted). This court reviews a sentence for substantive reasonableness under the abuse-of-discretion standard, and gives "substantial deference to district courts." *Friedman*, 554 F.3d at 1307 (quotation omitted). Accordingly, a district court's

-10-

sentence is substantively unreasonable only if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted). In examining a deviation from the advisory Guidelines, this court,

> may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 128 S. Ct. at 597. This level of deference is appropriate because a district court has "an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance under § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008).

*B. Analysis*

It is difficult to determine whether the government's claim regarding the district court's mention of Sayad's Iranian-Christian heritage is a procedural or substantive challenge.[1] Generally, a district court's use of an improper factor invokes procedural review. *See United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008); *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008) ("[I]f a

---

[1] The government's briefing on this point is unclear. At times the government argues the district court improperly weighed Sayad's religious and ethnic status because there is insufficient evidence in the record supporting the district court's belief that Iranian Christians require less deterrence than other cultural and religious groups. Brief of Appellant at 28-29. In other portions of its briefing, the government argues the district court's reliance on Sayad's ethnic or religious status was impermissible, regardless of the sufficiency of the record. Reply Brief of Appellant at 3, 5.

district court bases a sentence on a factor not within the categories set forth in § 3553(a), this would indeed be one form of procedural error.").  The question of whether a factor is within § 3553(a), and therefore proper, however, is not always easily resolved.  For example, the *Smart* and *Pinson* decisions contain conflicting dicta as to whether a district court's reliance on a defendant's race would represent procedural or substantive error.  *Compare Pinson*, 542 F.3d at 836 (implying it would be procedurally impermissible "for a court to consider the defendant's race in support of an upward variance"), *with Smart*, 518 F.3d at 804 n.1 (suggesting reliance upon race would represent substantive, rather than procedural, error because § 3553(a)(1) "allows district courts to consider the 'characteristics of the defendant,' and from a purely *procedural* perspective, race is a characteristic of the defendant").  *See also United States v. Wittig*, 528 F.3d 1280, 1289 (10th Cir. 2008) (Hartz, J., concurring) (implying substantive reasonableness is implicated when a district court relies on an "out-of-bounds" reason, such as the defendant's race or name, in fashioning a sentence).  This court need not decide whether a challenge to a district court's purported reliance on a constitutionally impermissible "characteristic[] of the defendant" is properly framed as procedural or substantive because the government's claim fails regardless of the reasonableness category to which it is assigned.

*1. Procedural Unreasonableness*

The district court committed no procedural error in mentioning Sayad's

Iranian-Christian status.[2]  Review of the transcript of the sentencing hearing

reveals the district court did not base its sentence on Sayad's status as an Iranian-

Christian.[3]  During its discussion of Sayad's "history and characteristics" under

[2] Because the government fails to establish any error on the part of the
district court, it is unnecessary to address the effect of the government's failure to
object to this alleged error at sentencing.  Under normal circumstances, the
government's failure to contemporaneously object to a procedural error would
result in forfeiture of the issue and plain-error review.  *See United States v.
Hamilton*, 510 F.3d 1209, 1218 (10th Cir. 2007).  At least one court has held it
inappropriate to apply the forfeiture rule in cases involving an alleged error which
arguably overlaps both categories of reasonableness review.  *See United States v.
Herrera-Zuniga*, 571 F.3d 568, 579-80 (6th Cir. 2009) (holding it would be
"inappropriate and patently unfair" to apply the forfeiture rule to a defendant's
procedural claim in light of confusion caused by the overlap between the
reasonableness categories).  This court need not decide whether similar leniency
is appropriate in this case because the district court committed no procedural
error.   Nevertheless, when presented with a sentencing error that arguably
overlaps both reasonableness categories, the better practice is certainly to
contemporaneously object to that error.

[3] At least one other circuit has remanded for resentencing when there was
"a sufficient risk that a reasonable observer, hearing or reading the quoted
remarks, might infer, however incorrectly, that [the defendant's] ethnicity and
alien status played a role in determining her sentence." *United States v. Leung*,
40 F.3d 577, 586 (2d Cir. 1994); *see also United States v. Kaba*, 480 F.3d 152,
158 (2d Cir. 2007) (vacating a sentence because the district court's references to
the defendant's national origin created "at least the appearance of unfairness").
Even under *Kaba* and *Leung*, a district court's mere "passing reference" to a
defendant's nationality does not warrant vacating a sentence. *See Leung*, 40 F.3d
at 587.  This court is unconvinced that a "reasonable observer" of the record in
this case would believe the district court based its sentencing decision on Sayad's
ethnic or religious status.  As noted above, the district court's mention of Sayad's
status as an Iranian-Christian was patently incidental to its discussion of his

(continued...)

§ 3553(a)(1), the district court highlighted Sayad's lack of maturity, his supportive family, his lack of substance abuse problems, and good physical health. The district court's only mention of Sayad's national origin and religion occurred toward the end of its discussion of what constituted "just punishment" under § 3553(a)(2)(A). Based on the context of the statement, the district court used the term "Iranian-Christians" as a proxy to describe the close-knit nature of Sayad's family and community. Under the facts of this case, the district court's single use of this term as descriptive shorthand was not procedurally unreasonable.

### 2. *Substantive Unreasonableness*

The government argues Sayad's sentence was substantively unreasonable because the record does not support the weight the district court attached to certain § 3553(a) factors in varying downward. Unlike procedural reasonableness review, which focuses on the permissibility of relying on a particular factor, substantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the "totality of the circumstances." *Gall*, 552 U.S. at 51 (holding the reviewing court must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance). This court employs a highly

---

[3](...continued)
family and community circumstances.

deferential standard of review in assessing the substantive reasonableness of a sentence. *Friedman*, 554 F.3d at 1307.

The government first argued the district court's weighing of several aspects of Sayad's background, including his family, community ties, lack of drug abuse problems, and general naivete, was substantively unreasonable. The district court's decision to give weight to these factors, however, is adequately supported by the record.[4] The evidence presented by Sayad's counsel, the letters from Sayad's community, as well as Sayad's and his father's statement provided the district court with adequate evidence from which to conclude Sayad was a good candidate for rehabilitation because he came from a particularly close-knit family and community. Furthermore, the record also contains ample evidence from which to conclude Sayad was naive and immature, even though he knew certain

---

[4]Under the Guidelines, such reliance on a defendant's "mental and emotional condition," "physical condition, including drug or alcohol dependence," and "family ties and responsibilities" in determining whether to depart downward is disfavored. USSG §§ 5H1.3, 5H1.4, 5H1.6. This case, however, involves a downward variance, not a downward departure. *See United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (discussing the distinction between "departures" and "variances"), *overruled in part on other grounds by Izarry v. United States*, 128 S. Ct. 2198, 2201 n.1 (2008). District courts are granted wide discretion in choosing which factors to rely on in determining whether a variance is justified under § 3553(a), and may choose to rely on factors disfavored by the Sentencing Commission. *Gall*, 552 U.S. at 57-59; *United States v. Pinson*, 542 F.3d 822, 838-39 (10th Cir. 2008); *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 & n.6 (10th Cir. 2008) ("A factor's disfavor by the Guidelines . . . no longer excludes it from consideration under § 3553(a).").

details about trafficking illegal drugs.[5]  The district court had the opportunity to observe Sayad and his interactions with his lawyer and family at both the plea hearing and the sentencing hearing, and was in the best position to assess Sayad's level of maturity.  In light of the district court's institutional advantage in making findings regarding Sayad's character, its decision that his general naivete and his family and community circumstances weighed in favor of a probationary sentence was not substantively unreasonable.

The government next asserts the district court abused its discretion by weighing Sayad's rehabilitative prospects in favor of a probationary sentence, and

---

[5] The government also argues the district court's rationale for imposing a probationary sentence was inconsistent with its prior finding that Sayad was not a minor participant under USSG § 3G1.2, and that this inconsistency forms a basis for holding the sentence substantively unreasonable.  *See United States v. Omole*, 523 F.3d 691, 700 (7th Cir. 2008).  This court need not decide whether inconsistent statements by a district court can render a sentence substantively unreasonable because the district court's statements in the present case were simply not inconsistent.  There undoubtedly is some tension between the district court's finding that Sayad was not a minor participant and its ultimate decision to only impose a sentence of probation.  But the rulings are not inconsistent, especially in light of the explanation provided by the district court.  First, the district court found that the amount of drugs transported by Sayad, his false statements upon arrest, his knowledge of the truck's electrical connections, and his use of the term "chickens" indicated he was not a minor participant under USSG § 3G1.2.  *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1131 (10th Cir. 2003) (holding a district court's minor-participant determination is a finding of fact reviewed for clear error).  Next, the court imposed a probationary sentence because of Sayad's overwhelming naivete, lack of drug or other sociopathic problems, the presence of a supportive family, and the family's need for Sayad's assistance.  The district court never stated, as one of its reasons for varying downward, that Sayad was a one-time drug offender or minor participant in the crime.

argues this court's recent decision in *United States v. Friedman*, 554 F.3d at 1308, supports its position. In *Friedman*, the district court sentenced the defendant to fifty-seven months' incarceration for bank robbery, a dramatic downward variance from the 151 to 188 month Guideline range. *Id.* at 1302. The *Friedman* court, however, was clear that its reversal was predominantly driven by the district court's unexplained disregard of Friedman's "extraordinarily extensive recidivist history." *Id.* at 1309 ("Friedman's entire criminal history reveals a continuous pattern of criminal conduct, beginning from the time he was a juvenile."). At Friedman's sentencing, the district court ignored the applicable career offender provisions, briefly noted Friedman's "changed attitude," and imposed a lenient sentence based upon a wholly unsupported "feeling that [Friedman] can make it." *Id.* at 1308-09 & n.11. This court held the evidence in support of the downward variance was insufficient in light of Friedman's criminal record, rejected Friedman's additional argument that the sentence was entitled to deference because it was based on "the district court's decision that rehabilitation outweighs the other § 3553(a) factors," and accordingly reversed the sentence imposed by the district court. *Id.* at 1312.

The present case is easily distinguishable from *Friedman*. Unlike Friedman, Sayad has no prior criminal history, and has spent the majority of his life working at his family's restaurant, not in prison for repetitive convictions. These facts alone make the district court's belief that Sayad could be rehabilitated

eminently more reasonable than the district court's "feeling" in *Friedman*. *Id.* at 1308 n.11. In addition, the district court in this case provided an adequate explanation of why it weighed the § 3553(a) factors in favor of rehabilitation. It stated Sayad's family "expressed considerable concern for him and his future," and noted Sayad's lack of substance abuse or other "sociopathic" problems. Furthermore, Sayad recognized the gravity of his actions, was on good terms with his probation officer, and had rehabilitated himself after his release from custody.[6] Accordingly, under the facts of the present case, the district court's decision that Sayad's prospects for rehabilitation weighed in favor of a probationary sentence was not an abuse of discretion.

Finally, the government argues the "sparse record" in this case does not support the significant variance imposed by the district court. The government, however, does not claim the district court committed procedural error by failing

---

[6] The government is correct that Sayad's argument would be more compelling if Sayad had begun his rehabilitation before his arrest. The Supreme Court in *Gall* noted a defendant's independent ability to rehabilitate himself prior to his arrest lent strong support to a district court's conclusion that the defendant was not going to return to a life of crime. *Gall*, 552 U.S. at 56-57 ("Compared to a case where the offender's rehabilitation occurred after he was charged with a crime, the District Court here had greater justification for believing Gall's turnaround was genuine, as distinct from a transparent attempt to build a mitigation case."). *Gall*, however, does not stand for the proposition that a district court is not entitled to weigh a defendant's post-arrest behavior at all in determining his potential for rehabilitation.

to adequately explain its sentence.[7]  Rather, it claims Sayad's sentence is substantively unreasonable because of the "limited nature of the record and the paucity of reasoning on the part of the district court."  *Friedman*, 554 F.3d at 1312 (holding such considerations most certainly bear on our review of the substantive reasonableness of . . . [a] sentence").

*Friedman* does not support the government's assertion that the adequacy of a district court's explanation of its sentence falls within the ambit of substantive reasonableness review.  Under *Gall*, a district court's failure "to adequately explain the chosen sentence" unmistakably represents procedural, not substantive, error.  *Gall v. United States*, 552 U.S. at 51.  Against this backdrop, *Friedman* merely acknowledges that in cases with "exceedingly limited" records, a district court's explanation of its sentence, or lack thereof, "bears on" the substantive reasonableness of its sentence.  *Friedman*, 554 F.3d at 1308 n.10 & 1312.

As previously elaborated, this case is easily distinguishable from *Friedman*. The record in this case is not limited, and the district court's reasoning was not sparse.  To the contrary, both adequately support the district court's weighing of the § 3553(a) factors in favor of a sentence of probation.  In sum, each of the government's arguments regarding the substantive reasonableness of the sentence fail.  The record in this case supports the district court's decision that the

---

[7] Nor does this court identify any procedural error in the district court's explanation of Sayad's sentence.

§ 3553(a) factors, on a whole, justify a downward variance. As a result, the district court's decision to impose a sixty-month probationary sentence on Sayad was not substantively unreasonable.

## IV. Conclusion

The district court's sentence in this case was both procedurally and substantively reasonable. Accordingly, this court **AFFIRMS** the probationary sentence imposed upon Alfered Sayad.