**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 16, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN CARLOS OLVERA-RIVERA,
a/k/a Cristian DeGalvino, a/k/a Rodrigo
Montolvo a/k/a Carlos,

Defendant - Appellant.

No. 09-3290
(D. Ct. No. 2:07-20167-03-KHV)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH, TACHA**, and **BALDOCK**, Circuit Judges.

_____

After examining the briefs and the appellate record, this three-judge panel has

determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The

case is therefore ordered submitted without oral argument.

Defendant-appellant Juan Carlos Olvera-Rivera pleaded guilty to ten counts

stemming from a large-scale cocaine distribution conspiracy in Kansas City, Kansas. On

appeal, he challenges his 264-month sentence, arguing that the district court erroneously:

_____

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(1) attributed certain amounts of cocaine to him; (2) applied a two-level enhancement for possession of a firearm under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2D1.1(b)(1); and (3) refused to apply a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Taking jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

Through an investigation conducted by various federal and local law enforcement agencies, investigators learned that customers seeking powder or crack cocaine would contact Mr. Olvera-Rivera, who would then contact two other individuals, Ramiro Vivanco-Correa and Sergio Loya-Villalobos, to supply the drugs to the customer. If Mr. Vivanco-Correa or Mr. Loya-Villalobos agreed to the transaction, Mr. Olvera-Rivera would arrange a time and place for the sale.

Boytina Locke was one of the customers who repeatedly ordered cocaine from Mr. Olvera-Rivera. Mr. Locke, in turn, would sell it to other individuals down the line. On October 10, 2007, based on intercepted telephone calls between Mr. Locke and Mr. Olvera-Rivera regarding a cocaine transaction, investigators conducted surveillance during which they saw Mr. Locke and two other individuals meet with Mr. Olvera-Rivera at a residence in Kansas City, Kansas. After the meeting, the two individuals were pulled over and officers discovered 1.98 kilograms of cocaine in their vehicle.

On November 29, investigators again intercepted a phone call in which Mr. Locke placed an order with Mr. Olvera-Rivera. Mr. Olvera-Rivera, in turn, contacted his two

suppliers.  The same day, officers saw Mr. Olvera-Rivera meet with Mr. Locke and later saw Mr. Locke meet with one of his customers.  The customer was thereafter stopped and arrested on outstanding warrants, and 272 grams of cocaine were seized from his car.

On December 1, 2007, Mr. Locke placed another order[1] with Mr. Olvera-Rivera. Mr. Olvera-Rivera then contacted Mr. Loya-Villalobos, who delivered the requested amount of cocaine to a house on 38th Street in Kansas City, Kansas.  When Mr. Locke arrived at the house, accompanied by his customer Charles Singleton, both men were arrested in their car by surveilling officers.  Mr. Olvera-Rivera and Mr. Loya-Villalobos were arrested inside the house.  Officers recovered 500 grams of cocaine from the kitchen.  They also found a .40 caliber pistol in Mr. Singleton's waistband.

Later the same day, officers searched another house in Kansas City believed to be the operation's "stash house."  They discovered 14.58 kilograms of cocaine[2] and $76,829 in cash.

Mr. Olvera-Rivera was charged with conspiracy to distribute cocaine, five counts of using a telephone in the commission of drug trafficking crimes, and unlawful re-entry

---

[1]Mr. Locke actually placed several orders that day, but only one is relevant to this appeal.

[2]At Mr. Olvera-Rivera's change-of-plea hearing, the government contended that 16 kilograms of cocaine were recovered at the stash house.  But the presentence report, which the government's appellate brief characterizes as quantifying the amounts of seized cocaine with more precision than was used during the plea hearing, quantifies the amount at 14.58 kilograms.  Govt. Br. at 8; PSR para. 80.  In any event, as we explain below, even if we disregard all of the cocaine found at the stash house, Mr. Olvera-Rivera's base offense level would remain the same.

of a previously deported alien.  He was also charged with three "distribution" counts: (1) possession of cocaine with the intent to distribute, based on the October 10 transaction; (2) distribution of cocaine, based on the November 29 transaction; and (3) attempting to possess cocaine with the intent to distribute, based on the December 1 transaction.  He pleaded guilty without a plea agreement to all counts.

A presentence report ("PSR") was prepared.  Paragraphs 57, 76, 77, and 78 described the three transactions, as well as the amount of cocaine, underlying the three distribution counts.  In a section titled "Drug Amount Attributed to Juan Carlos Olvera-Rivera," Paragraph 108 listed eighteen additional instances apart from the three distribution counts in which Mr. Olvera-Rivera was involved in cocaine transactions as part of the conspiracy.  The total amount of cocaine involved in those transactions was 13.75 kilograms.  Paragraph 109 in the same section of the PSR totaled the 500 grams recovered from the house on 38th Street on December 1 and the 14.58 kilograms recovered from the stash house on December 1, and converted the $76,829 recovered from the stash house to 3.34 kilograms, all for a total of 18.42 kilograms of cocaine.  When added to the 13.75 kilograms set forth in Paragraph 109, the PSR recommended that 32.17 kilograms be attributed to Mr. Olvera-Rivera for sentencing.  This resulted in a base offense level of 34.  *See* U.S.S.G. § 2D1.1(c)(3) (base offense level is 34 for offenses involving at least 15, but less than 50, kilograms of cocaine).

The PSR further recommended a two-level specific-offense enhancement for possession of a firearm based on the pistol carried by Mr. Singleton.  *See* U.S.S.G.

§ 2D1.1(b)(1).  The PSR recommended against any reduction for acceptance of responsibility under § 3E1.1, explaining that "[a]lthough the defendant entered a guilty plea, he has falsely denied any additional relevant conduct."  With a total adjusted offense level of 36 and a criminal history category of III, the Guidelines recommended a sentence of 235–293 months' imprisonment.

Mr. Olvera-Rivera filed extensive objections to the PSR, most of them relating to drug quantity.  Relevant to this appeal, he objected to Paragraph 108's computation of 13.75 kilograms of cocaine because it did not "establish[] a drug quantity with sufficient specificity."  He further objected to attributing the cocaine found in the stash house to him.  He argued that he should be sentenced based only on the drug quantities underlying the three distribution counts, which he stated were 1.98 kilograms for the October 10 transaction, .5 kilograms for the November 29 transaction[3], and .5 kilograms for the December 1 transaction.

Mr. Olvera-Rivera also objected to the firearms enhancement because neither he nor his associates possessed the pistol; rather, "the only person with a firearm was one of the individuals with whom Mr. Olvera[-Rivera] intended to transact business."  Finally, Mr. Olvera-Rivera contended that he should receive a full three-level reduction for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(b).

---

[3]Although the PSR stated that that transaction involved 272 grams, Mr. Olvera-Rivera contended in his objections that because the charge was for distributing 500 grams or more of cocaine, and because "[t]he evidence fails to establish a specific drug quantity above 500 grams . . . that amount should be used."

Days before his sentencing hearing, however, Mr. Olvera-Rivera filed a sentencing memorandum withdrawing most of his objections relating to the drug quantities.  In the memorandum, Mr. Olvera-Rivera specifically admitted that the 13.75 kilograms of cocaine in Paragraph 108 could be attributed to him for sentencing purposes, and he "modifi[ed] his objections to the computation of the guidelines sentencing range accordingly."  Thus, according to Mr. Olvera-Rivera, his base offense level should be 32, not 34.  *See* U.S.S.G. § 2D1.1(c)(4) (base offense level is 32 for offenses involving at least 5, but less than 15, kilograms of cocaine).  But Mr. Olvera-Rivera also maintained three specific objections to the PSR: (1) the attribution of 18.42 kilograms of cocaine to him based on the drugs and money found in the stash house; (2) the firearms enhancement; and (3) the denial of a three-level reduction for acceptance of responsibility.

At sentencing, the district court considered the parties' arguments and took testimony from an investigating officer on the issue of drug quantity.  Ultimately, the court used the 32.17-kilogram figure outlined in the PSR to calculate Mr. Olvera-Rivera's offense level.  It applied the firearm enhancement and did not give Mr. Olvera-Rivera a reduction for acceptance of responsibility.  The court sentenced him in the middle of the advisory range, to 264 months' imprisonment.

Mr. Olvera-Rivera now appeals, raising the same three objections he raised in his sentencing memorandum.

## II.  DISCUSSION

A.       Standard of Review

We review sentences for reasonableness under an abuse-of-discretion standard. *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009).  Reasonableness review encompasses both a procedural component in which we assess the district court's application of the Guidelines and its calculation of the sentencing range, as well as a substantive component in which we consider the length of the sentence imposed.  *See United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006).  Mr. Olvera-Rivera's challenges implicate his sentence's procedural reasonableness.  *See Gall v. United States*, 552 U.S. 38, 51 (2007) (procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence").

B.       Calculation of Drug Quantity

Mr. Olvera-Rivera's challenge to the district court's drug-quantity finding is dependent on whether he may be held responsible for at least 15 kilograms of cocaine. Under U.S.S.G. § 2D1.1(c), the base offense level is 34 for a quantity of cocaine that is at least 15 kilograms but less than 50 kilograms.  The base offense level is only 32, however, when the cocaine quantity is less than 15 but at least 5 kilograms.

On appeal, Mr. Olvera-Rivera contends that the court may only attribute to him the 13.75 kilograms detailed in Paragraph 108 of the PSR which he admitted responsibility

for in his sentencing memorandum and at the sentencing hearing. He argues that the district court erred in also using the 18.42 kilograms set forth in Paragraph 109 because that figure represents contraband seized from the stash house (as opposed to transactions he personally participated in), and because his role in the overall conspiracy was so minimal as to preclude the district court from attributing that contraband to him.

The district court properly set Mr. Olvera-Rivera's base offense level at 34 based on at least 15 kilograms of cocaine. Contrary to Mr. Olvera-Rivera's understanding, the PSR makes clear that only 14.58 kilograms of powder cocaine and $76,829, which converts to 3.34 kilograms of cocaine for sentencing purposes, were discovered at the stash house. Thus, the total amount recovered from the stash house amounts to 17.92 kilograms. The 18.42-kilogram figure set forth in Paragraph 109 of the PSR is the sum of the stash house quantity and the 500-gram quantity seized from the 38th Street house during the December 1 transaction; it is not, as Mr. Olvera-Rivera contends, the sum of the drug quantity found at the stash house alone.

Moreover, Mr. Olvera-Rivera specifically admitted to that 500-gram amount at his change-of-plea hearing, in his objections to the PSR, and at his sentencing hearing. He also admitted to the 1.98 kilograms of cocaine involved in the October 10 transaction and the 272 grams involved in the November 29 transaction, neither of which are included in the 13.75-kilogram figure he presses on appeal. The sum of these quantities is greater than 15 kilograms. Thus, even if we assume for purposes of this appeal that the district court erred in attributing the stash house contraband to Mr. Olvera-Rivera, any such error

did not affect the court's selection of his base offense level. *See Kristl*, 467 F.3d at 1055 (procedural error in calculating the Guidelines sentence does not warrant remand for resentencing unless the error affects the court's selection of the sentence imposed).

## C.     Enhancement for Possession of a Weapon

U.S.S.G. § 2D1.1(b)(1) provides for a two-level specific-offense enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the offense. "[T]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.3.[4]

Mr. Olvera-Rivera argues that the enhancement should not be applied to a person convicted of selling drugs when only the buyer possessed the weapon. He contends that in such circumstances, the weapon was not "readily available" to the seller for his use during the sale. This argument, however, misapprehends the relevant legal standard.

"Section 1B1.3(a)(1) directs courts applying a specific offense characteristic such as 2D1.1(b)(1) to consider all acts and omissions committed or aided and abetted . . . that occurred during the commission of the offense," which includes "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant, regardless whether a conspiracy is charged."

---

[4]"Commentary to the Guidelines is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. " *United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) (quotations omitted).

*United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (quotations and citation omitted). "Together, these provisions permit sentencing courts to attribute to a defendant weapons possessed by his co-defendants[5] if the possession of weapons was known to the defendant or reasonably foreseeable by him." *Id.* "[T]he district court's finding concerning foreseeability is a factual finding reviewable under a clearly erroneous standard." *Id.*

In this case, the district court found that Mr. Singleton's firearm clearly was present, that it was not clearly improbable that the firearm was connected to the offense, and that its presence and possession at the scene of the offense was reasonably foreseeable to Mr. Olvera-Rivera. In so finding, the court agreed with the government's position that Mr. Olvera-Rivera's prior involvement with drug crimes, the large quantities of drugs involved in the instant conspiracy, and Mr. Olvera-Rivera's practice of bringing another individual with him during drug transactions all showed that he was (or at least should have been) aware of the dangers inherent in the drug-trafficking business. Based on the record in this case, we cannot say that the district court clearly erred in finding that it was reasonably foreseeable to Mr. Olvera-Rivera that a drug customer would arrive at a scheduled transaction armed with a gun.

D.    Denial of Acceptance of Responsibility

Under U.S.S.G. § 3E1.1(a), a defendant's base offense level is decreased by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his

_____

[5]Mr. Singleton was also prosecuted for his involvement in the conspiracy.

offense." "Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard." *United States v. Tom*, 494 F.3d 1277, 1281 (10th Cir. 2007). The district court denied any reduction for acceptance of responsibility because it found that Mr. Olvera-Rivera's objections bordered on frivolity. It agreed with the government that he had denied responsibility for drug amounts for which he was clearly accountable and that he falsely characterized himself as a mere minion or courier in the conspiracy. *Id.*

On appeal, Mr. Olvera-Rivera contends that he should not be penalized for legal arguments advanced by his counsel. This contention is without merit. The objections to the PSR, while "legal" in the sense that they did not go to the facts underlying his actual convictions, nonetheless amounted to a near-total denial of responsibility for relevant conduct. Because "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility," *see* U.S.S.G. § 3E1.1 cmt. n.1(A), the district court did not clearly err in refusing to apply the reduction.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Olvera-Rivera's sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge


- 11 -