NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10123 |
| Plaintiff-Appellee, | D.C. Nos. 2:17-cr-00115-TLN-1 |
| v. | 2:17-cr-00115-TLN |
| PATRICK SLAVIN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted February 7, 2022
San Francisco, California

Before: HURWITZ and VANDYKE, Circuit Judges, and ERICKSEN,** District Judge.

Patrick Slavin was indicted on twelve counts of mail fraud under 18 U.S.C. § 1341, and nine counts of wire fraud under 18 U.S.C. § 1343. After a psychiatric evaluation, the district court determined that Slavin was incompetent to stand trial.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

The district court later issued an order authorizing the government to administer medication against Slavin's wishes to render him competent. Slavin appeals that order.

We have jurisdiction to review an order for involuntary medication under the collateral order exception to 28 U.S.C. § 1291. *United States v. Onuoha*, 820 F.3d 1049, 1051 (9th Cir. 2016); *Sell v. United States*, 539 U.S. 166, 176 (2003). The only issue in this appeal is whether the government has shown "*important* governmental interests" in prosecuting this case, as required for an order of involuntary medication to restore trial competency. *Sell*, 539 U.S. at 180. This issue is "primarily a legal question," so we review the district court's order de novo. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 693 (9th Cir. 2010). We affirm.

The first issue is whether Slavin's alleged offense, which arises out of his alleged participation in a fraudulent investment scheme, is serious. To analyze whether a crime is sufficiently serious to support an important governmental interest in administering medication to restore competency, the "starting point" is the length of a sentence the defendant likely would face under the federal Sentencing Guidelines; we then consider other relevant factors. *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008); *Onuoha*, 820 F.3d at 1055 (observing that relevant considerations include "the specific facts of the alleged

crime as well as the defendant's criminal history").[1]  Slavin acknowledges that his Guidelines range is between 70 and 87 months.  That range significantly exceeds Guidelines ranges that we have found to indicate serious offenses when combined with other circumstances showing seriousness.  *See Onuoha*, 820 F.3d at 1055 (range of 27–33 months); *United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014) (range of 33–41 months).  The facts alleged in this case—a fraudulent investment scheme spanning roughly eight years and costing investors at least $1.7 million—also indicate a serious offense that the government ordinarily would have an important interest in prosecuting.

Although Slavin asserts that the government's interest in prosecution is diminished because the public already understands that fraud is a serious crime, we never have suggested that the government only has an important interest in prosecuting crimes that are poorly understood.  The government maintains an interest in showing that a serious crime "will result *predictably* in conviction and a serious penalty of incarceration."  *Onuoha*, 820 F.3d at 1055 (emphasis added).

We also find no error in the district court's observation that prosecution may carry enhanced value as a means of general deterrence where, as here, the alleged

---

[1]     We adopted this approach in 2008, after the Sentencing Guidelines already had become merely advisory.  *Hernandez-Vasquez*, 513 F.3d at 919.  Despite their advisory nature, we recognized that the likely Guidelines range is the "best available predictor" of the length of a defendant's incarceration—albeit "not, however, the only factor that should be considered."  *Id.*

offense is a white-collar crime, whose perpetrators "often calculate the financial gain and risk of loss." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (recognizing that Congress, in adopting the Sentencing Factors at 18 U.S.C. § 3553(a), determined general deterrence to be "particularly important in the area of white collar crime") (quoting S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259). And a conviction would send a stronger deterrent signal to prospective fraudsters than would the mere fact that Slavin has spent several years in pretrial custody. *See Onuoha*, 820 F.3d at 1056 (noting "an important distinction between incarceration itself, and the significance for society of gaining a criminal conviction for a defendant's violation of the law").

Slavin, who has already been in pretrial custody for approximately 53 months, asserts that the length of that custody is a special circumstance that reduces the government's interest in prosecuting him. This period is more than a year short of the lower end of his Guidelines range of 70 to 87 months. The duration of Slavin's pretrial confinement thus "moderate[s]" but does "not eliminate" the "importance of the governmental interest in prosecution." *See Sell*, 539 U.S. at 186.

No other special circumstance reduces the government's important interest in prosecuting this case. We therefore agree with the district court that it is proper

for the government to administer medication involuntarily to render the defendant competent to stand trial.

**AFFIRMED.**