**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUVENAL CAVILLO-ARZATE,

Defendant - Appellant.

No. 12-3307
(D.C. No. 2:12-CR-20052-KHV-1)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY,** Senior
Circuit Judge.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Defendant and appellant, Juvenal Cavillo-Arzate, pled guilty to one count of illegal reentry by a deported alien who had previously been convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). He was sentenced to forty-one months' imprisonment. Arguing that his sentence is substantively unreasonable, Mr. Cavillo-Arzate appeals. We affirm.

## BACKGROUND

Mr. Cavillo-Arzate was convicted in 1996 of three counts of selling methamphetamine. He was sentenced to three years of imprisonment, which he satisfied. He was then deported to Mexico on February 14, 1998. Mr. Cavillo-Arzate returned illegally to the United States in November of 1999, some twenty-one months after he was deported. In the intervening period between his illegal reentry and his arrest on the instant offense, Mr. Cavillo-Arzate lived in Kansas with his wife and three children, the younger two of whom were born in the United States and are American citizens.

In the early morning hours of April 21, 2012, Mr. Cavillo-Arzate was stopped by the police in Shawnee, Kansas, at a DUI checkpoint. Mr. Cavillo-Arzate did not have a driver's license. When police officers inquired further of their dispatcher, it was determined that he was an unlawful alien. He was taken into custody by the police and subsequently turned over to agents of the Bureau of Immigration and Customs Enforcement.

As indicated, Mr. Cavillo-Arzate was then indicted for illegal reentry by a deported alien following a conviction for an aggravated felony. He pled guilty on July 11, 2012. In preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office prepared a presentence report ("PSR"). After setting the base offense level at 8, under USSG §2L1.2(a), the PSR applied the 16-level enhancement provided by USSG §2L1.2(b)(1)(A)(i), based upon Mr. Cavillo-Arzate's prior deportation following his conviction for a drug trafficking offense for which the sentence imposed exceeded thirteen months (i.e., his three methamphetamine sales counts). With a 3-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 21. The PSR also assigned 3 criminal history points for Mr. Cavillo-Arzate's prior conviction for three counts of the sale of methamphetamine, resulting in a criminal history category of II. Thus, his advisory Guidelines sentencing range was 41 to 51 months.

The PSR then described a number of Mr. Cavillo-Arzate's personal characteristics, including his family history, family ties, physical and mental condition, education, and employment history. It identified no factors which might warrant a departure or variance from the advisory range.

Mr. Cavillo-Arzate did not file a sentencing memorandum. At his sentencing hearing, he argued that he should receive a downward variance from

the 41- to 51-month sentencing range. He presented letters from his family and church, and he asserted that while he had been illegally in the United States, he had been a good provider and father to his children, two of whom were American citizens. Mr. Cavillo-Arzate then argued that he was entitled to a variance because he had taken steps to show that he would not return to the United States by getting assurances from schools in Mexico that they would accept his children as students even though they were United States citizens.

Mr. Cavillo-Arzate then argued that the advisory Guideline range was unreasonable in view of the facts surrounding his prior (methamphetamine) conviction. It was his first offense, he argued, but he did not get the "benefit" of it being a first offense, in that he was given a three-year sentence, as opposed to some lesser sentence like probation, which often is given to first-time offenders.[1] Thus, that prior conviction qualified as an aggravated felony for the purpose of his instant conviction, and "his guideline range in this case was greater than others similarly situated because he pleaded guilty as charged." Appellee's Br. at 4. The court responded to this by noting that Mr. Cavillo-Arzate was represented by counsel at his prior conviction, and that (for all we know now) he may have

---

[1]As his attorney explained at Mr. Cavillo-Arzate's sentencing hearing, "I thought it was kind of odd that for a first time offender at the state level in California, that there was no amendment to the charge, that he didn't have the opportunity for probation or anything like that, but it was essentially a three year sentence." Tr. of Sentencing Hr'g at 7, R. Vol. 2 at 30.

committed something worse, but pleaded to the three sales counts in a bargained plea.

In imposing sentence, the court acknowledged that it was required to consider a "broad variety of factors under the sentencing statute [18 U.S.C. § 3553(a)]." Tr. of Sentencing Hr'g at 13, R. Vol. 2 at 36. After enumerating those factors, the court stated as follows:

> One of the big factors is giving the same kind of sentences to the same defendants or two defendants who commit similar types of crimes and have similar types of criminal records because we think if you commit a certain kind of crime and you have a certain kind of criminal record, then you should get a certain sentence. . . .

> I honestly don't see any factors here which would take this case outside of the heartland of other immigration cases which I see. Sadly, given the fact that the family tragedy that this involves for you, this is the kind of scenario that repeats itself in a lot of the cases I see where somebody comes here illegally and then marries and sets down roots and has children who become American citizens, and it's heart wrenching. But if I were to grant your attorney's request for a downward variance or departure based on that, then it would be running straight into conflict with the principles about giving uniform sentences to people who commit similar crimes.

Id. at 14. The court then, with "regret," imposed a 41-month sentence, at the bottom of the advisory Guidelines range. Mr. Cavillo-Arzate objected to the substantive reasonableness of the sentence. This appeal followed.

**DISCUSSION**

Mr. Cavillo-Arzate argues his 41-month sentence is substantively unreasonable. We review sentences "under an abuse of discretion standard for procedural and substantive reasonableness." United States v. Gordon, 710 F.3d 1124, 1126 (10th Cir. 2013). "[W]e review the district court's legal conclusions *de novo* and its factual conclusions for clear error." United States v. Gallant, 537 F.3d 1202, 1234 (10th Cir. 2008). Mr. Cavillo-Arzate only challenges the substantive reasonableness of his sentence.

"[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" United States v. Sayad, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). We apply a presumption of reasonableness to a sentence which is within a properly calculated advisory Guidelines range. United States v. McBride, 633 F.3d 1229, 1232-33 (10th Cir. 2011). A defendant may rebut this presumption, however, by showing that his sentence is unreasonable in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215 (10th Cir. 2008).

Mr. Cavillo-Arzate's challenge to the substantive reasonableness of his sentence is both generalized and specific: "The district court's failure to impose a parsimonious sentence in Mr. Cavillo-Arzate's case was a result of a failure to

account for an unreasonable enhancement under the guidelines and a failure to recognize Mr. Cavillo-Arzate's mitigated circumstances."  Appellant's Br. at 6. The "general" objections address the wisdom and reasonableness of the 16-level enhancement as applied to any illegal reentrant; his specific objections address that enhancement as applied to Mr. Cavillo-Arzate and his particular situation. We address the general arguments first.

Mr. Cavillo-Arzate argues that USSG §2L1.2(a)(1)(A) lacks a sound policy rationale, was haphazardly adopted by the Sentencing Commission, and has been the subject of "thoughtful criticism" by "judges and other criminal justice professionals."  Id.  at 8.  We need not address these arguments in specificity, as our court, and other courts, have rejected such generalized challenges to the validity of the Guideline enhancement.  In United States v. Alvarez-Bernabe, 626 F.3d 1161 (10th Cir. 2010), we rejected the defendant's argument that the history and development of the sixteen-level enhancement demonstrated its inadequacy and illegality.[2]  We observed that a number of other courts had likewise rejected this argument.  See id. at 1166 (discussing cases).  We accordingly rely on that

_____

[2]We noted, in part, that, in enacting the sixteen-level enhancement, "the Sentencing Commission was merely following Congressional policy to impose more severe *statutory* penalties on previously deported aliens with a criminal record, who illegally return to the United States.  Thus, [the defendant's] argument really should be directed at Congress, not the Sentencing Commission." Alvarez-Bernabe, 626 F.3d at 1166.

precedent to reject Mr. Cavillo-Arzate's challenge to the validity of the sixteen-level enhancement employed to calculate his sentence.

As applied specifically to Mr. Cavillo-Arzate, he argues that the enhancement is unfair and erroneous because: his aggravated felony conviction is old (some sixteen years prior to the instant offense) and is his only prior conviction; he committed no other crime in connection with the instant offense; his family situation qualifies him for a lesser sentence; the district court improperly "double-counted" his prior conviction because it was used both as the basis for the sixteen-level enhancement and as the basis for his criminal history category of II; and his sentence is unusually long compared to other individuals who commit other offenses after a prior controlled substance conviction.

None of these arguments persuade us that the district court abused its discretion in applying the sixteen-level enhancement and in declining to vary from the advisory Guidelines sentencing range. With respect to his double-counting argument, the commentary to USSG §2L1.3 expressly states that, in computing a defendant's criminal history category, a "conviction taken into account [in calculating an offense level enhancement] is not excluded from consideration of whether that conviction receives criminal history points . . . ." USSG §2L1.2 cmt. 6. Furthermore, we have stated that we "have routinely upheld as reasonable the use of prior convictions to calculate both the criminal history category and a sentence enhancement, where [as here] . . . the Guidelines

authorize it." United States v. Ruiz-Terrazas, 477 F.3d 1196, 1204 (10th Cir. 2007).

Mr. Cavillo-Arzate also argues the age of his prior conviction (some sixteen years before) militates against application of the enhancement. As the government points out, the length of time between his prior conviction and his instant conviction is irrelevant, inasmuch as illegal residence in the United States is a continuing offense, which he has been committing since his illegal reentry in November 1999, only a few years after his aggravated felony offense. Thus, the fact that it took a number of additional years before he was caught is immaterial.

Similarly, the fact that Mr. Cavillo-Arzate did not commit any other crime in connection with his apprehension on the instant offense, and that he committed no further crimes after his aggravated felony, is laudable but in no way diminishes the seriousness of either his prior felony conviction or his current offense. And his family situation is no different, in any relevant way, from many other illegal aliens who have been subject to the sixteen-level enhancement.

Finally, Mr. Cavillo-Arzate argues that his sentence is unusually long compared to the sentences of others who commit a crime after an aggravated felony. He particularly points to the six-level increase (as opposed to the sixteen-level increase here) that applies under USSG §2K2.1(a)(4)(A) to a felon in possession of a firearm who had a prior felony conviction for a crime of violence. That Guideline provision is distinguishable, as the government points out. The

statutory maximum sentence for firearm possession is lower than the statutory maximum for the instant offense, and other enhancements can be added to the six-level enhancement in the firearm context. There is therefore no unfair discrepancy between the two Guideline schemes.[3]

In short, Mr. Cavillo-Arzate has failed to rebut the presumption that his sentence, which was at the bottom of the advisory Guidelines sentence range, is unreasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3]Mr. Cavillo-Arzate also argues that the Guidelines impose a higher base offense level for those, like him, who illegally reenter the United States following a deportation after an aggravated felony conviction, than for those who commit far "worse" offenses. We decline to second-guess the Sentencing Commission's decisions, in this context, regarding the comparative seriousness of different offenses.