**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLEN TAYLOR HERGET,

Defendant - Appellant.

No. 12-6047

(W.D. Oklahoma)

(D.C. No. 5:11-CR-00081-F-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

Defendant Glen Herget pleaded guilty in the United States District Court

for the Western District of Oklahoma to receipt of child pornography, *see*

18 U.S.C. § 2252(a)(2), and was sentenced to 20 years' imprisonment. He

appeals his sentence, arguing that it was both procedurally and substantively

unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   BACKGROUND

On September 30, 2010, a guest at a local motel told Oklahoma City police officers that after accessing the motel's wireless internet, she saw a file titled "Glen's LimeWire files" in her iTunes' shared folder. R., Vol. 2 at 4. Inside the file she found seven to ten additional folders with sexually explicit labels suggesting child pornography. The officers were unable to open the files. After discovering that only one person named Glen was staying at the motel, officers contacted Defendant and seized his laptop after talking with him. A forensic examiner found 13 videos and three or four photographs of child pornography on the computer's hard drive. The laptop also contained chat messages between Defendant and others discussing sexually explicit and heinous acts involving young boys. There was no direct evidence, however, that Defendant had ever actually abused a minor.

After being indicted on nine counts of receipt of child pornography, *see* 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, *see id.* § 2252A(a)(5)(B), Defendant reached an agreement with the government and pleaded guilty to one count of receipt of child pornography. The plea agreement provided that the government would dismiss the remaining counts and reserved to Defendant the right to appeal a sentence above the advisory guideline range.

The presentence investigation report (PSR) calculated Defendant's total offense level at 34, which included a two-level enhancement because Defendant's

offense involved distribution.  *See* USSG § 2G2.2(b)(3)(F) (2009).  Based on this total offense level and Defendant's criminal-history category of II, the advisory guideline range for imprisonment was 168 to 210 months.  But because Defendant had previously been convicted of a child-pornography offense, he faced a mandatory minimum sentence of 180 months' imprisonment.  *See* 18 U.S.C. § 2252(b)(1).

Defendant raised an objection to the PSR's two-level enhancement for distribution, arguing that he had downloaded child pornography for his personal use and not to distribute it.  The objection was then litigated at the February 9, 2012, sentencing hearing.  To substantiate the enhancement, Oklahoma City detective Robert Holland, who specializes in computer forensics and had analyzed the hard drive of Defendant's computer, testified that Defendant's computer had a software program on it called LimeWire, which allows one computer to use the internet to share files with other computers (peer-to-peer file sharing).  He explained that LimeWire users can search for downloadable files by name and that users often descriptively name their files.

Detective Holland further said that when he uninstalled and then reinstalled LimeWire to determine what Defendant would have seen when he installed the program, a pop-up window appeared during installation that warned about file sharing.  To complete the installation process, a user must click through this screen.  The screen showed that the program's default setting was to allow public

-3-

sharing of all files in the user's shared folder, although a user can disable file sharing by clicking a box on the pop-up window or by later accessing the program's options. (Detective Holland stated that by default LimeWire downloads all files to the public folder.) Detective Holland also testified that LimeWire can share files with other programs, including iTunes.

According to Detective Holland, Defendant's LimeWire had the sharing feature enabled and his publicly shared folder contained descriptively named videos of child pornography. The screen from which Defendant would have played the videos on his computer stated that the listed files were being shared with the world.

Detective Holland explained that the officers may not have been able to access Defendant's files from the motel guest's computer when they arrived because access would not be possible if Defendant's computer had been turned off. Although Detective Holland stated that he had no evidence that anyone had actually downloaded files from Defendant's shared list, he stated that anyone on the same network could have downloaded Defendant's files.

Defense counsel argued (1) that because the default setting was for LimeWire to allow for file sharing, there was no direct evidence that Defendant intended to share his files; and (2) that there was no evidence that Defendant had actually shared the files because the police officers had been unable to open them. The district court overruled Defendant's objection to the distribution

enhancement. It found that Defendant had made "a conscious, specific choice to make [his child pornography files] available on LimeWire" because LimeWire makes it plain to users that their files will be shared unless they choose otherwise and Defendant's computer had child pornography in a shared folder. R., Vol. 3 at 49.

The district court then heard argument on what sentence it should impose. The government asked for an above-guidelines sentence because of the sadistic nature of Defendant's chat messages, his previous child-pornography conviction, and the length and violent nature of the videos. Defense counsel requested a sentence at the statutory mandatory minimum, arguing that the chat messages were based on fantasy and that there was no evidence that Defendant had ever abused a minor; that the minimum sentence would protect the public because Defendant would be more than 60 years old when he was released and the court could impose a lifetime term of supervised release; and that the minimum sentence would act as an adequate deterrent, especially given that Defendant's previous conviction in state court had resulted in a sentence of only 18 months' imprisonment.

The district court decided that a "relatively modest upward variance" from the guideline range was necessary and imposed a sentence of 240 months. *Id.* at 58. Before imposing the sentence, the court stated that it was mindful of (1) its "obligation to impose a sentence that is sufficient but not greater than necessary

to satisfy the statutory objectives of sentencing," (2) the factors set forth in 18 U.S.C. § 3553, and (3) "the nature and circumstances of the offense[,] . . . the history and characteristics of the defendant, the kinds of sentences available, [and] the need to avoid unwarranted sentencing disparities." *Id.* at 57. It also stated that its predominant, but not sole, concern was incapacitation. The court found the contents of Defendant's chat messages to be telling, especially in light of his previous conviction, and determined that the case was not in the same category as the ordinary child-pornography case.

On appeal Defendant asks this court to vacate his sentence on the ground that it is both procedurally and substantively unreasonable.

## II. DISCUSSION

We review a district court's sentencing decision "for reasonableness under a deferential abuse-of-discretion standard." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009). Reasonableness has "a procedural and a substantive component." *Id.* (internal quotation marks omitted). A sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Substantive reasonableness, on the other hand, involves whether the length of the

-6-

sentence is reasonable given all the circumstances of the case in light of the factors set forth in § 3553(a)." *Sayad*, 589 F.3d at 1116 (brackets and internal quotation marks omitted).

## A. Procedural Reasonableness

We read Defendant's brief to raise two procedural challenges to his sentence: (1) that the district court miscalculated the guideline range by imposing the two-level enhancement under USSG § 2G2.2(b)(3)(F) even though his files were not available for download, as evidenced by the inability of the police officers to open them; and (2) that the district court, in fashioning the sentence, considered only incapacitation and ignored retribution, deterrence, and rehabilitation. We address each challenge in turn, reviewing "de novo the district court's legal conclusions regarding the guidelines and . . . its factual findings for clear error." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).

### 1. Distribution Enhancement

The application note to § 2G2.2 defines *distribution* to mean "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." USSG § 2G2.2, cmt. appl. n.1. It also adds that "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation

of such material by a defendant." *Id.* Applying this definition, the district court reasoned:

> The question that is at issue is whether indeed the evidence shows any act related to the transfer of material involving the sexual exploitation of a minor. And the defendant's configuration of his LimeWire software, together with the presence of these files shown by [the government's exhibit] in the directory that was available, clearly establishes that the defendant had committed acts related to the transfer of material involving the sexual exploitation of a minor. That was the very purpose of the LimeWire software.
>
> Moreover, looking restrictively at that middle phrase, beginning with "including" and ending with "transportation," the evidence clearly establishes that this case falls within the example, the very first example, specifically, "possession with intent to distribute." This defendant clearly did possess these files on his computer with intent to distribute. In essence, he intended the natural and probable consequences of his acts, namely distribution of these files to anyone who had the capability of searching for them and retrieving them from his computer.

R., Vol. 3 at 50.

Defendant argues that the district court's analysis is flawed because there is no evidence that a transfer of child pornography took place. But the actual transfer of child pornography is unnecessary. The application note states that possession with intent to distribute is sufficient. And the court's finding that Defendant possessed child pornography with the intent that it be shared with other LimeWire users is not clearly erroneous. The discussion of 18 U.S.C. § 2252A(a)(2) in *United States v. Geiner*, 498 F.3d 1104 (10th Cir. 2007), does not assist Defendant because we have interpreted the term *distribution* in § 2252A more narrowly than it is defined in § 2G2.2. *See id.* at 1109 n.5.

-8-

## 2.    Statutory Objectives

Defendant contends that the district court erred by considering only incapacitation without considering retribution, deterrence, and rehabilitation. The government argues that we should review this contention for plain error because Defendant never made this objection below. *See Gantt*, 679 F.3d at 1246 ("If . . . Defendant did not preserve the procedural challenge below, we review only for plain error."). It appears that the government's argument has some merit, but we need not resolve the issue because the district court committed no error.

> Before imposing Defendant's sentence, the court stated:

> In sentencing, in this case as in all cases, I'm very mindful of my obligation to impose a sentence that is sufficient but not greater than necessary to satisfy the statutory objectives of sentencing. That applies regardless of what the offense is. And that certainly applies in this case.
> I'm also mindful of the Section 3553 factors and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment as well as adequate deterrence, protection of the public from further crimes of the defendant, and the need to provide the defendant with needed education or vocational training or other correctional treatment.

R., Vol. 3 at 57. Although the court noted that its "predominant concern from the standpoint of sentencing is quite simply incapacitation," it explicitly stated that incapacitation was not its "only concern." *Id.* Indeed, in announcing the sentence, the court "concluded that the Section 3553 factors most prominently *but not exclusively* including incapacitation require a relatively modest upward variance from the guideline range." *Id.* at 58 (emphasis added). We are satisfied

-9-

that the district court "fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006) (internal quotation marks omitted); *see id.* ("The sentencing court . . . is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." (internal quotation marks omitted)).

**B.     Substantive Reasonableness**

"[A] district court's sentence is substantively unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Sayad*, 589 F.3d at 1116 (internal quotation marks omitted). We are not persuaded that Defendant has shown such unreasonableness.

Defendant claims that his history and characteristics favor a 180-month sentence, pointing out, among other things, that he had a physically abusive father, that he had mental-health issues, that he was a dependable employee, that he was honorably discharged from the Army, and that there was no evidence that he had ever sexually abused a minor. But the district court could properly determine that other facts, namely Defendant's chat messages and his previous conviction, weighed in favor of an above-guidelines sentence. In the chat messages Defendant boasted of having shown his genitals to his roommates' children, claimed to have had sex with his former step-son, described the sadistic

-10-

and grotesque acts involving young boys that he wanted to see portrayed in video, and expressed a desire to rape a three year old. The district court stated that although it did not find that Defendant had ever engaged in child abuse, these "chats w[ere] very telling," R., Vol. 3 at 57, and that Defendant's "unequivocal and repeated indication of those matters that are of interest to him viewed against the background of [his] previous criminal conduct . . . take this case out of the category of ordinary child pornography cases," *id.* at 58. The court further explained that the ordinary child-pornography case involves only looking, but the chat messages showed "those things in which [Defendant] was keenly interested to the point of compulsion, if you will, to the point of obsession." *Id.*

Defendant, relying on *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007), contends that his chat messages cannot support an upward variance because the messages reflected his thoughts and ideas, not his actions. In *Allen* the defendant pleaded guilty to possession of methamphetamine with intent to distribute. *See* 488 F.3d at 1248. The guidelines range for the offense was 120 to 135 months' imprisonment. *See id.* at 1249. But the district court varied upward to 360 months' imprisonment, because of evidence that the defendant had told a woman that he had a desire to kidnap, rape, and murder young girls, had asked her to assist him in doing so, and had taken preliminary steps to act on his desires. *See id.* at 1245–48, 1252. We vacated the sentence as substantively unreasonable, holding that a district court "may not discard the advisory

-11-

Guideline range and impose sentence, instead, on the basis of evidence of the defendant's uncharged, unrelated misconduct, whether actually committed or contemplated for the future." *Id.* at 1262.

*Allen* does not control this case. There are several significant differences. The upward variance here was 30 months, less than a 15% increase over the top of the guidelines range; in *Allen*, the increase was 225 months, more than a 160% increase. Defendant's chat messages, unlike the defendant's statements in *Allen*, were related to the charged conduct; the messages discussed sexually perverse conduct involving young boys, precisely what the child-pornography videos on Defendant's computer depicted. And although *Allen* states that a defendant may not be sentenced for crimes that he has not yet committed based on evidence that he is likely to commit them in the future, *see id.* at 1260, that is not what happened here. Rather, the district court relied on the chat messages as evidence that Defendant's interest in child pornography had reached "the point of compulsion, . . . the point of obsession," suggesting a greater need for incapacitation. R., Vol. 3 at 58. *See Allen*, 488 F.3d at 1262 ("Sentencing courts are empowered to impose lengthier sentences when needed to protect the public from further crimes of the defendant."). In sum, the district court did not "discard the advisory Guideline range," *id.* at 1262, and "[Defendant] was not sentenced as if he had committed a totally different[,] and far more serious, crime," *United*

*States v. Pinson*, 542 F.3d 822, 838 (10th Cir. 2008) (internal quotation marks omitted).

Next, Defendant argues that his sentence creates an unwarranted sentencing disparity because he received a 20-year sentence while a conviction for sexual exploitation, which requires a person to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, carries only a 15-year statutory mandatory minimum. *See* 18 U.S.C. § 2251(a), (e). But because Defendant has a previous state child-pornography conviction, he is also subject to a mandatory minimum sentence of 15 years. *See id.* § 2252(b)(1). Indeed, he was subject to a higher statutory maximum (40 years) than someone convicted of sexual exploitation (30 years). *See id.* §§ 2251(e), 2252(b)(1). Wide statutory ranges for potential sentences reflect that significant mitigating and aggravating circumstances may be present. Congress certainly contemplated that some defendants who violate § 2252(a)(2) should be punished more harshly than some who violate § 2251(a). The sentence here does not create an unwarranted sentencing disparity.

Finally, Defendant argues that the length of his sentence is more than what is necessary to serve the purposes of sentencing. He contends that a 15-year sentence with a lifetime of supervised release would suffice to protect the public, and a shorter sentence would suffice to deter similar conduct. Perhaps. But we cannot say that the district court abused its discretion given the facts and

circumstances before it, particularly in light of its concern for incapacitating

Defendant.[1]

## III.    CONCLUSION

We AFFIRM Defendant's sentence.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

---

[1] We note that Defendant contends that the government did not present evidence warranting an upward departure.  But Defendant's sentence was an upward variance, not an upward departure.  *See Gantt*, 679 F.3d at 1247 ("A departure from a guideline sentence is a sentence outside the guideline range but justified by specific provisions in the guidelines. . . .  In contrast, a sentence variance is a sentence not authorized by the Sentencing Guidelines but permissible now that the guidelines are merely advisory.") (citations omitted).