FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 3, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

JOSHUA DANIEL-ENOCH COX, a/k/a
Joshua Daniel Cox,

　　　Defendant - Appellant.

No. 23-6149
(D.C. No. 5:22-CR-00284-JD-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

　　　Defendant Joshua Cox pled guilty to one count of interstate travel with intent

to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b).  At

sentencing, the district court varied upwards from the advisory guideline range of

151 to 188 months and imposed a sentence of 216 months, to be followed by a

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

10-year term of supervised release.  Mr. Cox now appeals the substantive reasonableness of his sentence.  Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

In February 2022, Mr. Cox, a resident of Denton, Texas, began communicating with a confidential human source ("CHS") on an instant messaging internet and phone application called Wickr.  Mr. Cox sent at least four images of child pornography and one video of child pornography to the CHS and repeatedly expressed to the CHS, whom he believed was a female, an interest in having sex with children.  After communicating with Mr. Cox for approximately two weeks, the CHS contacted FBI investigators and requested the Wickr username for an FBI online covert employee ("OCE"), who would pose as the CHS's uncle.  After receiving the Wickr username for the OCE, the CHS provided that username to Mr. Cox.  Mr. Cox contacted the OCE on Wickr and introduced himself.

Within days of being introduced to the OCE, Mr. Cox sent Wickr messages to the CHS and the OCE that contained a link to a cloud storage and file hosting service.  The link contained approximately 1,180 files of child pornography, over 1,000 of which were identified as child pornography videos.  Over the next several weeks, Mr. Cox also sent the OCE two videos and one still image of child pornography through Wickr, and repeatedly expressed to the OCE his sexual interest in young girls.

As Mr. Cox and the OCE continued to chat on Wickr, the OCE disclosed to Mr. Cox that the OCE had access to one male child and two female children, ages 12 and 9, and was willing to arrange for Mr. Cox to meet and have sex with those children. Mr. Cox responded that he was interested in meeting and engaging in sex with the girls, but not the boy. Mr. Cox and the OCE then began to make plans for Mr. Cox to visit the OCE and have sex with the two female children on the weekend of June 10, 2022. Mr. Cox told the OCE that he would pick up supplies, including Viagra and condoms, and Mr. Cox sent the OCE an image of a medical printout that purported to show that Mr. Cox was free of sexually transmitted diseases.

In late May 2022, Mr. Cox and the OCE decided to change the date of Mr. Cox's visit to the weekend of June 24, 2022. Mr. Cox and the OCE discussed hotel options for the visit and, in early June 2022, Mr. Cox told the OCE that he had booked a room at a hotel in south Oklahoma City just off of Interstate I-35. Mr. Cox later sent the OCE images of car rental and hotel confirmation numbers. Mr. Cox also told the OCE that he planned to transport his encrypted collection of child pornography videos to Oklahoma City and share them with the OCE.

On June 24, 2022, Mr. Cox drove a rental car from Denton, Texas, to the hotel in south Oklahoma City where he had made a reservation. FBI agents arrested Mr. Cox at the hotel and transported him to a local field office for processing. During a custodial interview, Mr. Cox admitted to communicating with individuals using the Wickr phone application and making plans to travel to Oklahoma City for the opportunity to engage in sexual acts with two female minors. Mr. Cox also

3

disclosed that he had "catfished" five or six female minors in 2022 by presenting himself online as a 16-year-old male and chatting with them, all in an attempt to persuade them to give him nude or "sexy" photos of themselves. Supp. ROA, vol. I at 21. FBI agents conducted a consensual search of Mr. Cox's rental car and found Viagra, two computer hard drives, and an Amazon package containing children's jewelry-making kits.

## B. *Procedural History*

### 1. **Indictment and Plea Agreement**

In July 2022, a federal grand jury in the Western District of Oklahoma returned a four-count indictment against Mr. Cox, charging him with (1) distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); (3) attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); and (4) interstate travel with intent to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b).

Mr. Cox entered into a written plea agreement with the Government. He agreed to plead guilty to Count 4. In exchange, the Government promised to dismiss the remaining three counts. The parties also agreed that Mr. Cox should receive a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). If the district court applied that downward adjustment, the Government would move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) if it determined that Mr. Cox qualified for that additional adjustment.

Mr. Cox waived his right to challenge the procedural reasonableness of the sentence, but preserved his right to challenge the substantive reasonableness if the district court imposed a sentence above the applicable Guidelines sentencing range.

2. **Presentence Report**

After accepting Mr. Cox's guilty plea, the district court ordered a presentence investigation report ("PSR") to be prepared. The PSR applied a base offense level of 24 under U.S.S.G. § 2G1.2(a)(4); specific offense characteristic enhancements under U.S.S.G. §§ 2G1.3(b)(2)(B), (b)(3)(A), and (b)(5), and a multiple-count adjustment under U.S.S.G. § 3D1.4. The resulting adjusted offense level was 37. After applying the two deductions for acceptance of responsibility, the PSR arrived at a total offense level of 34. Because Mr. Cox had no prior criminal history, the PSR calculated a criminal history score of zero and a criminal history category of I. Together, the total offense level and the criminal history category resulted in an advisory Guidelines sentencing range of 151 to 188 months.

3. **Sentencing Memoranda**

Mr. Cox filed a sentencing memorandum asking the district court to impose a below-Guidelines sentence of 60 months. He noted that he developed post-traumatic stress disorder ("PTSD"), agoraphobia, panic attacks, and suicidal thoughts resulting from his military service in Iraq and received "a 70 percent disability rating due to" his PTSD. Supp. ROA, vol. II at 11. Mr. Cox argued that supervised release "would more than securely ensure [his] good behavior" and would allow him "continued access to mental health resources" to deal with his mental health issues. *Id.* at 14.

5

He also pointed to his lack of criminal history. Mr. Cox argued that, compared to other inmates, a lengthy prison sentence would disproportionately affect him and his family, because his parents and brother lived with him and relied on his disability income.

The Government also filed a sentencing memorandum, arguing for an above-Guidelines sentence of 240 months plus a supervised release life term. The Government argued the crimes Mr. Cox "intended to commit [we]re worse" than the crime he pleaded guilty to because he "planned to meet up with two children and hoped to engage in sexual acts with both children." Supp. ROA, vol. I at 20, 24. It further argued that "the most concerning aspect of [Mr. Cox's] fantasies" was his belief "that because he refuses to engage in violent sex with a child, his sexual abuse of the child would not cause any harm." *Id.* at 21.

The Government argued that various sentencing factors outweighed the aspects of Mr. Cox's history and characteristics weighed in his favor. For example, notwithstanding Mr. Cox's lack of criminal history, it argued that he "ha[d] been committing crimes for quite some time" because he admitted that "he began viewing child pornography at the age of 16" and had thus "been viewing explicit images and videos of children for more than half his life." *Id.* at 23. The Government observed that Mr. Cox "was not just a passive viewer of child pornography" because he "distributed child pornography to individuals he met online." *Id.* It also said Mr. Cox "admittedly 'catfished' young girls in an attempt to obtain nude or explicit

6

photos." *Id.* Incapacitation via incarceration, the Government argued, was "the most effective way to protect the public from [Mr. Cox's] predilections." *Id.* at 65.

4. **Sentence**

At the outset of the sentencing hearing, the district court adopted the PSR's calculations and the advisory Guidelines sentencing range.

The Government then presented testimony from the FBI agent/OCE who chatted with Mr. Cox on Wickr and helped to arrange Mr. Cox's trip to Oklahoma City. The agent testified that Mr. Cox told her "he would surf the Internet, to include the dark web, looking for child pornography videos and images" and, while doing so, both received and distributed child pornography to other individuals. ROA, Vol. III at 15. The agent understood that Mr. Cox was obtaining child pornography directly from individuals who were "actually producing child pornography themselves." *Id.* at 16. She further testified that Mr. Cox told her he "was looking for incestual families, families that he could be a part of that he could have access to sexually engage with children." *Id.* at 18. The agent said it was "clear that [Mr. Cox] wanted to make this kind of a long-term-multiple-visits type of relationship where he could" father children with the CHS and then molest those children. *Id.* at 24.

Before announcing its sentence, the district court found that "[t]he nature and circumstances of this offense [we]re egregious." *Id.* at 68. It highlighted that Mr. Cox "had an extensive collection and w[as] engaged in the transportation and distribution of child pornography," and that those "images and videos represent[ed] rape, sexual abuse and assault that" the victims "suffered as children, sometimes at

the hands of their fathers, grandfathers or other family members, and that each time an image is shared, that represents further harm to the victim of basically having that wound reopened and reliving that horror." *Id.* at 69–70.

The district court also found that Mr. Cox's "communications with the OCE and CHS were demented, shocking, and show[ed] that [he] knew this was wrong, which" demonstrated his "lack of respect for the law." *Id.* at 70. The court stated it had "no doubt" that Mr. Cox would have carried out the crime with the two minor females. *Id.* at 72. The court emphasized the sentence must "reflect the extreme nature and extreme seriousness of this offense" and "protect the public." *Id.* It said that given Mr. Cox's "current young age of 39, public safety" was "a very real and weighty concern." *Id.* at 72–73.

The district court acknowledged Mr. Cox's personal history and characteristics, including his close familial relationships, his support of his family, his military service, his significant mental health history, and "the devastating collateral effects and consequences" his sentencing would have on his family. *Id.* at 73. The court also noted that Mr. Cox had no prior criminal history. But it expressed concern, based on Mr. Cox's own statements, about his likelihood of reoffending.

The district court "decline[d] to vary or depart downward," stating it did "not believe that such a sentence would be sufficient to reflect . . . [t]he seriousness of the offense, promoting . . . respect for the law, providing just punishment, specific deterrence as to [Mr. Cox], and protecting the public from further crimes." *Id.* at 75. It did "not find that the mitigation in this case would justify a sentence below the

8

advisory guideline range" because Mr. Cox "ha[d] already substantially benefited by pleading to the reference counts, which do not carry a mandatory minimum imprisonment sentence." *Id.* It noted that if Mr. Cox had been convicted of all four counts, his estimated Guidelines range "would have been 292 months to 365 months." *Id.* As for "the collateral impact on" Mr. Cox's family, the court stated that factor did not justify "a sentence other than what [it] intend[ed] to impose." *Id.* at 76.

The district court concluded "that an upward variance [wa]s warranted in this case," but "not to the extent sought by the . . . government." *Id.* It said that the Government's proposed upward variance failed to "give sufficient consideration and weight to [Mr. Cox's] mitigating characteristics, including [his] ultimate acceptance of responsibility and remorse." *Id.* The court thus explained that "the government's request d[id] not give sufficient consideration and weight to" Mr. Cox's "mitigating characteristics, including [his] ultimate acceptance of responsibility and remorse, [his] zero criminal history category," and "the role" he played "in [his] family." *Id.*

The district court noted that U.S.S.G. § 5K2.21 includes "a policy statement that" a court "may depart upward to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed as part of a plea agreement" and "that did not enter into the determination of the applicable guideline range." *Id.* In that regard, the court said that if Mr. Cox had been convicted of the additional counts, he "would have been subject to mandatory minimum sentences of not less than five years as to Counts 1 and 2 and not less than ten years as to Count 3," and

9

that his advisory Guidelines range "would have been 292 months to 365 months total for imprisonment." *Id.* at 76–77.

The district court stated it "ha[d] considered this policy statement" but was "not going to depart on this basis." *Id.* at 77. It instead was "going to vary upward to 216 months['] imprisonment, to reflect the weight of the [sentencing] factors" it found most important in this case, including "[t]he seriousness of the offense, promoting respect for the law, providing just punishment, specific deterrence as to [Mr. Cox], and protecting the public from further crimes" committed by Mr. Cox. *Id.* The court said the advisory Guidelines range of 151 to 188 months did not "adequately account[] for the statutory factors as applied in this case." *Id.* It "d[id] not believe that this sentence w[ould] create unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.*

Finally, the district court stated that it "intend[ed] to impose a term of supervised release of 10 years, to reflect the same concerns [it] ha[d] noted with respect to [the] term of imprisonment." *Id.* at 78. It found that life supervision was "not warranted, given that . . . Mr. Cox w[ould] be required to register as a sex offender . . . and considering his age . . . at the conclusion of his term of supervision." *Id.*

After the district court entered final judgment, Mr. Cox filed a timely notice of appeal.

## II. **DISCUSSION**

Mr. Cox argues that his sentence is substantively unreasonable.

### A. *Legal Background*

"We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Kaspereit*, 994 F.3d 1202, 1207 (10th Cir. 2021); *see Gall v. United States*, 552 U.S. 38, 41 (2007). This standard requires us to "recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). A district court "has an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance under § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). Thus, "we deem a sentence unreasonable only if it is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012) (quoting *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009)).

We must determine whether the sentence's length is reasonable considering all the circumstances of the case and the factors set out in § 3553(a). *United States v. Durham*, 902 F.3d 1180, 1238 (10th Cir. 2018). The § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for a sentence to reflect the crime's seriousness, to deter future

crimes, to prevent the defendant from committing more crimes, and to provide rehabilitation; the legally available sentences; the Sentencing Guidelines; the Sentencing Commission's policy statements; the need to avoid unwarranted sentence disparities; and the need for restitution. *See* 18 U.S.C. § 3553(a); *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018). "[T]hese factors do not necessarily bear equal weight, and the district court" must perform "the delicate task of balancing these factors." *United States v. Walker*, 844 F.3d 1253, 1259 (10th Cir. 2017).

### B. *Application*

Mr. Cox generally argues that either a Guidelines sentence or a below-Guidelines sentence would sufficiently achieve the ends of justice for a person with little to no risk of recidivism and that the district court's upward variance was far more than necessary. The following discussion addresses his specific arguments. Aplt. Br. at 12–13.

### 1. **Recidivism Risk**

Mr. Cox argues that his sentence exceeds his recidivism risk. He cites recidivism statistics contained in a United States Sentencing Commission ("U.S.S.C.") publication to contend that the 60-month sentence he requested "would have released him closer to age 43 where he's statistically unlikely to recidivate." *Id.* at 14. Because he would be "between 53–57 years-old" when he is now scheduled to be released, his current sentence "holds no statistical value and thus. . . little substantive reasoning." *Id.* at 14–15. He further argues that his zero criminal history

score means that his risk of recidivism is lower than defendants with some criminal history.  We reject these arguments.

Mr. Cox relies on U.S.S.C recidivism statistics that include all federal criminal offenders.[1]  They tell us little about the recidivism risk he poses as a sexual offender.[2] And although the district court noted that Mr. Cox's zero criminal history "would typically indicate that [he] would be likely not to reoffend," it was "concerned about [Mr. Cox's] own statements" to law enforcement authorities regarding the illegal activities he had been involved in, "the length of time" that he had been interested in children and child pornography, and his "young age."  ROA, Vol. III at 74.

---

[1] *See* United States Sentencing Commission, Recidivism Among Federal Offenders: A Comprehensive Review (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf; United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines (2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

[2] U.S.S.C has published reports that specifically address sentencing issues, including recidivism, related to "non-production" and "production" child pornography offenses.  *See* United States Sentencing Commission, Federal Sentencing of Child Pornography Non-Production Offenses (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf; United States Sentencing Commission, Federal Sentencing of Child Pornography Production Offenses (2021), https://www.ussc.gov/sites/defaults/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf.  Mr. Cox does not, however, rely on those reports and we are not persuaded that any of the data contained in them undercuts the district court's analysis in this case.

13

## 2. Denial of Mr. Cox's 60-Month Request

Mr. Cox requested a "a significant below guideline" sentence of 60 months, expressed "his remorse, [and] his desire and need for treatment," and provided evidence that he "suffers heavily from the onset of service-related" PTSD. Aplt. Br. at 12–13. The district court "decline[d] to vary or depart downward" because it did "not believe that such a sentence would be sufficient to reflect" the "seriousness of the offense, promoting [Mr. Cox's] respect for the law, providing just punishment, specific deterrence as to [Mr. Cox], and protecting the public from further crimes." ROA, Vol. III at 75. The record supports that the court did not abuse its discretion in denying Mr. Cox's request.

## 3. BOP Programs and Supervised Release

Mr. Cox argues the Bureau of Prisons ("BOP") programs that the district court recommended for him to complete,[3] the 10-year length of his term of supervised release, and the conditions of supervised release, support a significantly lower sentence. He also argues that first-time imprisonment "can yield significantly effective results without lengthy time in prison." Aplt. Br. at 19 (capitalization omitted).

These arguments do not establish substantive unreasonableness. The BOP programs were intended to help address Mr. Cox's mental health issues and to lessen

---

[3] These included cognitive processing therapy for PTSD, a sex offender residential program, a sex offender nonresidential program, sexual self-regulation, and two programs designed for veterans.

the chances of him reoffending.  They did not alleviate the district court's concerns about the seriousness of the offense, promoting Mr. Cox's respect for the law, providing just punishment, deterring future criminal conduct, and protecting the public.

### 4.  **No Harm Argument**

Mr. Cox argues that "the lack of evidence to show that a single person was harmed by" his "direct conduct undercuts the strongest rationale for an above-guideline sentence."  *Id.* at 23 (capitalization omitted).  He asserts there was "no evidence to show that [he] knew or dealt with any producers of child pornography," no evidence he "produced child pornography," no evidence "he ever had sex with a child" or "anyone under eighteen years of age," and no evidence he "was ever around young children" or "went around schools, playgrounds, or places where young children frequent."  *Id.* at 23–24.  We reject these arguments.

Although Mr. Cox's offense of conviction involved two fictional children, the evidence showed that he believed they were real and that he traveled from Texas to Oklahoma intending to have sexual relations with them.  Further, Mr. Cox shared numerous images and videos of child pornography with the OCE, causing continuing harm to the victims portrayed.[4]  Finally, before his arrest, Mr. Cox had been

---

[4] *See* Publ. L. No. 104-208, § 121, 110 Stat. 3009 (codified at 18 U.S.C. § 2251) (Congress found, in passing the Child Pornography Prevention Act of 1996, that "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years" and that "distribution of child pornography . . . invades the child's privacy and reputational interests" and "can haunt the minor for years to

catfishing multiple teenage girls to persuade them to send him naked pictures of themselves, effectively attempting to produce child pornography and harm the victims of his catfishing activities.

5. **Case Law**

Fifth, Mr. Cox argues that various cases support his position that a within-guidelines or below-guidelines sentence would have been sufficient under the § 3553(a) sentencing factors. But his cases do not show his sentence was substantively unreasonable. For example, in *United States v. Abraham*, 944 F. Supp. 2d 723 (D. Neb. 2013), the defendant possessed and distributed numerous images and videos of child pornography. But unlike Mr. Cox, the defendant in *Abraham* had never taken any steps to act on his sexual interests in children and he never solicited images of child pornography from underage females. And unlike Mr. Cox, the defendant presented expert testimony opining that he "presented a low risk of committing future acts of sexual misbehavior or violence." *Id.* at 726.

Our own research has produced numerous cases that support the district court's upward variance. For example, in *United States v. Herget*, 499 F. App'x 743 (10th Cir. 2012), the defendant pled guilty to one count of receipt of child pornography after police found 13 videos and three or four photographs of child pornography on the defendant's computer hard drive. Although the defendant's

---

come"; also noting that "the existence of and traffic in child pornographic images . . . presents a clear and present danger to all children").

16

computer also contained chat messages between the defendant and others "discussing sexually explicit and heinous acts involving young boys," there "was no direct evidence" that the defendant "had ever actually abused a minor." *Id.* at 745.

We affirmed as substantively reasonable a 240-month sentence that was an upward variance from the advisory guideline range of 168 to 210 months. We noted that the upward variance "was 30 months, less than a 15% increase over the top of the guidelines range." *Id.* at 749; *see also United States v. Escobar*, 559 F. App'x 703, 704 (10th Cir. 2014) (affirming as substantively reasonable a 100-month sentence for one count of possession of child pornography, which was a 13-month increase over the top of the advisory guideline range of 70 to 87 months). Here, the upward variance was 28 months, which was less than a 15 percent increase over the top of Mr. Cox's advisory guidelines range.

In *United States v. Adams*, 12 F.4th 883 (8th Cir. 2021), "an undercover FBI agent posted an advertisement on Craigslist offering children for sexual purposes." The defendant responded and "express[ed] interest in meeting the fictional 8-year old daughter for sexual intercourse." *Id.* at 886. The defendant "also sent the undercover agent two videos and one image of sexually explicit material involving a child." *Id.* The defendant pled guilty to one count of distribution of child pornography. At sentencing, the district court varied upwards from the advisory guideline range of 97 to 121 months and imposed a sentence of 180 months "because of [the defendant's] attempted hands-on offense against the fictional 8-year old girl." *Id.* at 887. On appeal, the Eighth Circuit affirmed the substantive reasonableness of the sentence,

17

finding "no abuse of discretion because the district court gave greater weight to the aggravating factor of an intended hands-on offense than it did to the mitigating factors argued by" the defendant. *Id.*

In *United States v. Fogle*, 825 F.3d 354 (7th Cir. 2016), the defendant pled guilty to "two counts of conviction for offenses involving the distribution and receipt of child pornography, as well as travel to engage in illicit sexual conduct with a minor." *Id.* at 356. The applicable guideline range was 135 to 168 months. The defendant requested a sentence of 60 months and the government, in accordance with the terms of the plea agreement, recommended 151 months. The district court, however, varied upwards from the guideline range and sentenced defendant to 188 months for each count, with the terms to be served concurrently. On appeal, the Seventh Circuit affirmed the sentence as substantively reasonable, noting that "[t]he district court provided a thorough explanation for its imposition of an above-guidelines sentence, which is all that was required." *Id.* at 359. The same holds true in Mr. Cox's case.

\*    \*    \*    \*

We conclude the district court acted within its discretion in varying upward from the advisory guideline range and imposing a sentence of 216 months.

18

## III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge